# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRIGIDA AUGUSTO,**

                **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　**Case No.  6:06-cv-1889-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### I. BACKGROUND

#### A.      Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on September 29, 2004. R. 49-55, 225-27.  She alleged an onset of disability on August 1, 2004, due to depression, fibromyalgia, and lupus.  R. 100, 240, 260-61.  Her application was denied initially and upon reconsideration. R. 32-48.  Plaintiff requested a hearing, which was held on December 1, 2005, before Administrative

Law Judge James E. McAfee, Jr. (hereinafter referred to as "ALJ").  R. 249-65.  In a decision dated December 13, 2005, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 30.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 13-14. The Appeals Council denied Plaintiff's request on October 12, 2006.  R. 6-8.  Plaintiff filed this action for judicial review on December 12, 2006.  Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of depression and pain associated with fibromyalgia and lupus.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found Plaintiff had hypertension, asthma, controlled with medication, fibromyalgia, and a depressive disorder, impairments that were severe, but not severe enough to meet or equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 23, 29, Findings 3-4.  Plaintiff was twenty-nine years old at the time of the ALJ's decision; she has a high school education and past work experience as a massage therapist, a housekeeper, and a shoe sewer.  R. 15, 49, 63-70, 253.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform substantially all of the full range of light work, as she could lift and carry 10 pounds frequently and 20 pounds occasionally; she could stand, sit or walk for six hours in an eight-hour workday.  R. 29, Finding 6.  In making this determination, the ALJ found that Plaintiff's allegations regarding persistent aches and pains is credible, but the evidence as a whole failed to fully support her allegations of extensive physical limitations.[1]  R. 23.  The ALJ determined that Plaintiff could not perform her past relevant work.  R. 29, Finding 7.  Considering Plaintiff's vocational profile and RFC,

---

[1]  Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies.

-2-

the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy.  R. 30, Finding 12.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 30, Finding 14.

Plaintiff now asserts four points of error.  First, Plaintiff contends the ALJ erred by assessing her RFC without a mental work-related limitation, even though he found she had a severe mental impairment.  Second, she claims the ALJ erred by finding she had the RFC to perform light  work contrary to the reviewing physician's opinion which placed moderate limitations on her mental work-related functioning.  Third, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony.  Fourth, she asserts that the ALJ erred by assessing her RFC of light work which permits lifting and carrying up to twenty, when the consulting examiner limited Plaintiff to lifting up to fifteen pounds.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

**A.      Plaintiff's mental impairment**

Plaintiff argues that the medical evidence reflected depression, which the ALJ found to be a "severe" impairment; thus, it was error for the ALJ not to include Plaintiff's mental limitations when assessing her RFC.  Plaintiff argues these findings are contrary and irreconcilable.

The Commissioner contends that although the ALJ did not indicate specific mental limitations in his RFC findings (R. 29, Finding 6), by finding Plaintiff could perform only light [unskilled] work encompassed by the Grids, he was implicitly limiting Plaintiff to unskilled work. Doc. No. 14. Plaintiff objects to the Commissioners *post hoc* rationalizations of the ALJ's decision on this issue. *See* Doc. No. 20. Because the Court finds that the ALJ did explicitly find that Plaintiff's depressive disorder causes no restrictions of activities of daily living or episodes of decompensation, and only mild difficulties in maintaining social functioning, concentration, persistence and pace, the ALJ was not required to include these limitations in the RFC analysis; thus, no inconsistency exists.

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. § § 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work)

prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that her impairment is not so slight and its effect not so minimal.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, the ALJ found Plaintiff's depression caused only mild difficulties in maintaining social functioning, concentration, persistence and pace and no restrictions of activities of daily living or episodes of decompensation, based on the recent treatment notes from Plaintiff's treating psychologist.  R. 23.  The ALJ fully recited Plaintiff's testimony regarding her mental health and fully reviewed her mental health treatment records from 2005 which reflected a history of abuse, as well as alcohol and cocaine abuse, the last time being in August 2004.  R. 26.  She reported she had used cocaine daily in 2004.  R. 26.  During a consultative psychological evaluation by Louis F. Damis, Ph.D. ABPP and R. Christopher Votolato, Psy.D., they found her thought processes were normal and there was no evidence of delusions, ideas of reference or obsessions.  Attention and concentration, insight and judgment were grossly intact, and there was no evidence or report of suicidal or homicidal ideation, intent, or plan.  The ALJ noted Plaintiff had scored an 86/100 on a Modified Mini-Mental State Exam and the examiner explained that, based on the claimant's age and level of education, a score below 91 was typically indicative of some deficit in cognitive functioning; however, the

examiners noted these weaknesses in performance were likely reflective of English as a second language as well as slight inattentiveness and decreased mental efficiency consistent with her depressive disorder.  R. 26.  They assigned her a GAF[2] of 58.  R. 26.  The ALJ also cited progress notes from Plaintiff's treating psychologist that showed her symptoms of depression improved with treatment, and by November 19, 2005, she was doing well (until she stopped taking the medication but then restarted).  R. 26-27.  Consistently her speech was noted to be normal, her thinking logical and her thought content appropriate; her cognitive functioning, short and long term memory and fund of knowledge were intact.  R. 27.

Plaintiff contends that the ALJ's findings are in contradiction to the special technique for assessing mental limitations as required by the SSR, which states:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, *unless* the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

20 C.F.R. § 404.1250a (emphasis added).  In this case, the ALJ did find Plaintiff had none or mild in the first three categories, with no restrictions in activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence and pace.  R. 23.  He further determined that Plaintiff had no episodes of decompensation at work in work-like settings.  R. 23.  However, the regulation does not mandate a finding of not "severe" – it says the

---

[2]The global assessment of functioning (GAF) is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994). The GAF scale ranges from 0 to 100 with a lower score indicating greater level of social and occupational impairment.  *Id.* at 34.  A score of 51 to 60 indicates moderate impairment; and 61 to 70, mild impairment. http://ps.psychiatryonline.org: Psychiatric Services 53:730-737, June 2002, "Global Assessment of Functioning Ratings and the Allocation and Outcomes of Mental Health Services," Rudolf H. Moos, Ph.D., Aran C. Nichol, A.B. and Bernice S. Moos, B.S.

SSA "will generally conclude" the mental impairment is not severe "*unless* the evidence otherwise indicates that there is more than a minimal limitation" in the ability to do basic work activities. *See* 20 C.F.R. § 404.1250a.

The ALJ was entitled to find at step two that Plaintiff had a "severe" mental impairment because it indicated "more than minimal limitation" on her work activities; but those limitations were not "marked" enough to limit Plaintiff in performing work. In the state reviewing psychiatrist's June 6, 2005 Mental Residual Functional Capacity Assessment (R. 210-13) for example, Plaintiff had "moderate" restrictions of daily living and "moderate" difficulties in maintaining concentration, persistence, or pace (R. 206), but despite these moderate difficulties, the reviewer believed "within physical limits the claimant seemed capable of basic cook/shop/chores though her depression might limit those activities to somewhat limited stretches and in a low stress environment using all allocated rest periods." R. 212. Plaintiff's mental limitations were mild though they may have leaned toward the moderate range at times; it was more conservative for the ALJ to find the impairment was "severe" at step two, even if Plaintiff's limitations were not of the caliber that they would affect her RFC.

In similar circumstances in *Lane v. Astrue,* __ F. Supp.2d __, 2008 WL 53706, *7 (E.D. Tenn. Jan. 3, 2008), the ALJ denied benefits even though he found the plaintiff suffered from "severe" anxiety and depression, along with other exertional impairments. The plaintiff argued that the ALJ's inclusion of depression and anxiety in his step two "severity" analysis meant that those conditions must also have "significantly limited" her ability to do basic work activities at step five, thus, mental limitations should have been included in her RFC assessment. Here, Plaintiff contends that "a 'severe' mental impairment by definition significantly impacts basic work-related functions." Doc.

-8-

No. 13 at 10.  That is not necessarily the case.  The ALJ's determination that Plaintiff's depression is "severe" at *step two* does not equate with a finding that significantly impacted her ability to do work at *step five*.  As the court explained in *Lane*,

> The "severe" impairment threshold of *step two* is a *de minimis* hurdle . . . employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint. An applicant is rejected at step two only if the alleged impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  [Social Security regulations] alternatively describe the step two "significantly limits" threshold as meaning merely "having more than a minimal effect."  In sum, step two and step five are two different creatures.  The ALJ's inclusion of anxiety and depression among his finding of combined impairments which are "severe" at step two simply is not probative or binding regarding his step five application of the grid.

__ F. Supp. 2d at __, 2008 WL 53706 at *6.

The appellate courts have held that "mild" and even "moderate" restrictions in mental residual functional capacity ("RFC") do not significantly compromise a claimant's capacity for work.  *See, e.g., Ortiz v. Secretary of Health & Human Servs.,* 890 F.2d 520, 527-28 (1st Cir. 1989); *cf. Reliford v. Barnhart*, 157 Fed. Appx. 194, 195-96 (11th Cir. 2005) (unpublished) (affirming ALJ's application of the grids where moderate limitation in ability to respond appropriately to changes in work setting did not significantly compromise plaintiff's ability to perform light work).

The ALJ's determination that Plaintiff's depression was "severe" at step two, but the functional impact on activities of daily living, social functioning, maintaining, concentration, persistence and pace, or episodes of decompensation were none or mild is not "irreconcilable" and is supported by substantial evidence.

### B. Residual Functional Capacity

Plaintiff also argues that the ALJ erred in not considering or in rejecting some or all of the reviewing psychiatrist's expanded list of limitations in work-related functions, including moderate limitations in maintaining attention and concentration and ability to complete a normal work week. R. 210-11.   Plaintiff argues the ALJ cannot ignore the reviewing psychiatrist's opinion but must apply the factors in the regulations for assigning weight to the opinion.  Doc. No. 13 at 13.  Plaintiff is incorrect.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  The reviewing physician's opinion is generally entitled to less weight than the treating physician's,  having not treated or even examined the Plaintiff.  In this case, the ALJ "considered the opinion of the state

-10-

agency mental health specialist (Exhibit 13F [R. 196-213]), but has given it limited weight in light of more recent treatment notes from the claimant's treating psychologist." R. 23.

The November 2005 notes from Plaintiff's treating psychiatrist, Raju Napdimandalam, cited by the ALJ, reflect that Plaintiff "reported doing well on meds" and that her mood had improved, aside from the time that she stopped taking the medication and then restarted. R. 243. Although she appeared sad and teary, her cognitive functioning and fund of knowledge was intact and age appropriate. R. 243-47. The psychiatrist assigned a GAF of 65 and prescribed additional medications, Ambien and Cymbalta in addition to the Lexapro she was already taking. R. 27 (citing R. 25-46). Her GAF score on the next visit was 60. Based on these treatment notes, the ALJ appropriately concluded:

> [T]he claimant struggles with depression but her recent GAF scores and responsiveness to medications show her symptoms are manageable. She testified that she tried to kill herself by slashing her wrists in November 2005, but when she saw her psychiatrist after this incident, she convincingly denied suicidal thoughts and was never hospitalized, voluntarily or involuntarily. . . The state agency psychologist opined the claimant's depression causes moderate difficulties in understanding, remembering and carrying out detailed instructions, but the undersigned disagrees and gives his opinion only limited weight. The claimant testified she reads books when home alone, and the weight of the evidence fails to support significant deficits in her mental functioning.

R. 27. The ALJ's opinion that Plaintiff's symptoms are "manageable" and his partial rejection of the reviewing psychiatrist's opinion of Plaintiff's limitations is based on substantial evidence. Moreover, the ALJ's determination that Plaintiff's testimony regarding her limitations (physical) was exaggerated is consistent with his determination that her depression was manageable, *i.e.*, she overstated her symptoms. Plaintiff inconsistently disclosed her cocaine abuse as "sporadic" and "in the remote past" during her psychological evaluation (R. 185) and as a daily habit in 2004 (until August) during another doctor visit. R. 177. Plaintiff also reports to physicians that she was

-11-

diagnosed with Lupus in early 2005 (*see, e.g.*, R. 179), but such a diagnosis is not in the records anywhere, as the ALJ noted. R. 23.

Plaintiff's lack of candor reflects on her description of her mental limitations as well.

### C. Application of the Grids

Plaintiff claims that because she suffered from depression, she had a non-exertional limitation, which precluded the application of the grids and required VE testimony. Plaintiff cites the moderate restrictions opined by the reviewing psychiatrist. R. 210-11.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*,

67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

To preclude use of the grids, a limitation must significantly or severely restrict the ability to work.  A minor or merely possible restriction is insufficient.  *See Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986).  The ALJ did not err in concluding that the "moderate" or "mild" opinions in this case did not equate to significant or severe impairment.  *See Lane v. Astrue*, __ F. Supp. 2d __, 2008 WL 53706, *6 (E.D. Tenn. Jan. 3, 2008).  In this case, the ALJ considered Plaintiff's physical impairments, including fibromyalgia and resulting pain, and properly assigned an RFC for light work.  The ALJ further specifically found that Plaintiff's capacity for light work was substantially intact and had not been compromised by any nonexertional limitations.  R. 30, Finding 13.  Because Plaintiff could perform unlimited types of work at a light level, it was unnecessary to hear from a VE to establish whether she could perform work existing in the national economy.  *See Foote*, 67 F.3d at 1559.  Accordingly, the ALJ was justified in his reliance upon the grids.  *See id.*

**D.  Lifting Restriction**

Plaintiff contends that the ALJ erred in finding that Plaintiff could perform light work which permits lifting up to twenty pounds, when Dr. Perdomo, the examining physician, opined she could

-13-

only lift a maximum of fifteen pounds.  Doc. No. 13 at 16.  The commissioner contends Plaintiff's

argument about Dr. Perdomo's opinion (R. 24-25, 155) is misplaced.

The ALJ specifically noted he gave Dr. Perdomo's opinions significant weight, with more

weight assigned to the recent lifting precautions.  R. 25.  As the ALJ noted, Dr. Perdomo examined

Plaintiff on two separate occasions, in November 2004 and May 2005.  R. 24-25, citing 154-57.  In

the latter examination in May 2005, Dr. Perdomo opined that Plaintiff had no musculoskeletal

functional limitations on physical examination and could stand, walk, and sit for 8 hours in an 8-hour

workday with normal breaks.  R. 25, 155.  Dr. Perdomo also limited Plaintiff to *frequent* lifting and

carrying of no more than 15 pounds and opined that she should avoid repetitive bending, stooping,

or crouching.  R. 25, 155, 157.  Since the ALJ limited Plaintiff to *frequently* lifting 10 pounds and 20

pounds *occasionally*, his RFC is consistent with Dr. Perdomo's opinion.  Thus, the ALJ's opinion is

based on substantial evidence.

### III.  CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and

activities are affected by her ailments to some degree.  The ALJ appropriately considered these

circumstances and analyzed them in relation to the exacting disability standard under the Social

Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements

of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is

directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 18, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record